IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JERRY W. WILLIS,

      Plaintiff,                               No. CIV S-04-1926 GGH

     vs.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

      Defendants.                       ORDER

_____ /

*Introduction and Summary*

        Plaintiff, Jerry Willis, 48 years old at the time of his 2004 administrative hearing, seeks review of the final decision of the Commissioner denying him disability insurance benefits (Title II).  For the reasons given below, judgment in plaintiff's favor must be made, and remand to the Commissioner must be ordered for the purpose of more fully developing the record and answering the questions which cannot be legitimately answered on the present record.

*Background*

        Plaintiff filed for disability benefits on June 13, 2002, soon after his trucking business failed/closed alleging "deteriorating disc in neck, crushed left arm with artery bypass, broken left ankle, hyperthyroidism, migrains (sic)."  (Tr. 53).  Although plaintiff had ceased to

1

drive trucks, he managed four drivers and the business aspects of hauling gravel up to April 2002. In fact he earned $66,000 in 2002. The ALJ found that these earnings constituted substantial gainful activity and plaintiff was not entitled to any disability findings for previous periods on account of this income. This finding is not disputed here. Thus, the earliest plaintiff could be found disabled is May 2002 and subsequent.

Administrative Law Judge Mark Ramsey made the following formal findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's degenerative disc disease of the cervical spine, and degenerative joint disease of the left ankle. He is also status post injuries to the left upper extremity in 1984 with vascular surgical repair are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to perform a full range of light exertional work. In particular, he can stand and walk for six hours in ½ hour increments and lift and carry twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours and occasionally bend, climb and balance. The claimant is limited in pushing with the left lower extremity and should avoid working at heights and around moving machinery.

7. The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

8. The claimant is a "younger individual between the ages of 45 and 49" (20 CFR § 404.1563).

9. The claimant has a "high school (or high school equivalent) education" (20 CFR § 404.1564).

10. The claimant has the residual functional capacity to perform substantially all of the full range of light work (20 CFR § 404.1567).

11. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, Medical-Vocational Rule 202.21, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

12. The claimant's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations. Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

(Tr. At 21-22)

*Issues*

Plaintiff raises as issues:

1. The ALJ failed to consider all of plaintiff's impairments;

2. Plaintiff's treating physician's opinion was improperly rejected on plaintiff's residual functional capacity, and the examining psychologist's opinion was improperly rejected as well;

3. The ALJ's credibility analysis was deficient;

4. Use of the Grids was inappropriate.[1]

\\\\\

\\\\\

---

[1] Plaintiff claims "five principal errors," but only enumerates four.

The court finds that the consulting psychologist's opinions were improperly rejected, and that further record development was required. The court need not discuss the remaining issues.

*Discussion*

    A.  Mental Health Problems

In early 2004, plaintiff was evaluated by psychologist (Konrad Reichurdt). This report depicted plaintiff as markedly impaired by sequellae from his 1984 accident and trauma to the head. (Tr. 138-143). Cognitive testing indicated organic brain damage. His mental intelligence was below average. (The report indicated that plaintiff did not even know the identity of the current President of the United States.) The clinician's diagnostic impressions included major depression, mood disorder, panic disorder, post traumatic stress disorder and learning disorders. Indeed this clinician noted that plaintiff had suffered brain damage, cerebral contusions, and ischemic attacks. Plaintiff suffered "Serious Symptoms with serious impairment in social, Psychological, Physical and occupational activities." In conclusion:

> The claimant would be prone to episodes of emotional deterioration from stress encountered in the workplace because of his panic attacks and depression with rage reactions from frustration and periodic worsening. He has significant brain damage resulting in severe cognitive deficits. Affect, interest and everyday activities are disturbed. He becomes angry/panicky under stress. He has a poor learning curve and is not likely to profit from training. He seems very week (sic) and fragile. He shows very poor reaction to change. He is not likely to follow instructions well. He does not seem to get along with others. He is limited intellectually. He is not able to keep track of time well enough to be at work on time....He could not travel by himself to work as he becomes to (sic) disoriented and confused. He could not stand or sit for any period of time. His concentration and pace are not adequate for a normal job. He would be a danger to himself and others on the job....

(Tr. 142-43).

\\\\\

\\\\\

\\\\\

4

If this opinion were accurate, under any definition of "severe impairment," plaintiff was severely impaired.[2] Yet the ALJ completely rejected the opinion of this examining psychologist, and would not find even that plaintiff's mental condition qualified for the rather de minimis threshold of "severe impairment." The ALJ correctly noted (with the exception of treatment for migraine headaches) that plaintiff had not been treated for any complaints of a mental disorder or brain damage, and somewhat correctly noted that "this report is entirely inconsistent with the remainder of the record; the report contains inconsistent factual information and is contrary to the claimant's own testimony at the hearing." (Tr. 18).

> The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.

Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).

To a certain degree the ALJ was correct. Except with respect to migraine headaches and a 1984 significant head trauma which did have some noted residual effects, see (Tr. 166, 157) (stuttering since injury), the medical record does not contain episodes of mental health difficulties. "Two question depression screens" at the VA facility where plaintiff underwent his most recent treatment resulted in negative findings. (Tr. 146, 158.) It is difficult from a layperson's standpoint to believe that plaintiff had been able to drive trucks throughout the 1990s, and recently supervise the running of his truck business with four employees up through April 2002, if he had mental problems of this severity in the recent past. Further, if

---

[2] An impairment is not severe only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996).

plaintiff had such severe mental problems, it is curious that none of plaintiff's treating physicians noted such.  Nevertheless, neither the ALJ nor the undersigned is expert in the progressive effects of head trauma injuries, and whether they must be fully apparent from the very start, or whether the more severe effects can have a later onset where they then cross over the line between adequate maintenance of life activities and an inability to cope or compensate.  This is not a situation where the examining physician's report was simply based on the subjective complaints of the person examined, or was otherwise bereft of objective manifestations of medical problems.  Rather, extensive medical testing was performed.  Given this seemingly extensive, recent testing, the ALJ's somewhat correct characterization of the record is not clear and convincing.  It raises more questions that it answers.   At the very least, it was incumbent upon the ALJ to acquire counter-medical evidence.

      B.  Remaining Issues

         The court need not definitively opine on plaintiff's remaining issues.  To the extent it is found on remand that plaintiff does have significant mental defects, use of the grids would be inappropriate.  Moreover, plaintiff's mental medical condition may have much to do with credibility.  However, nothing in this order prohibits the ALJ from acquiring further evidence on plaintiff's neck condition.  The treating physician did indicate that her rather extensive lifting restrictions might change on review of the MRI (a question which was never later posed to her).  While the MRI did relate that "there is no evidence for significant neurologic compromise," (Tr. 178), the MRI did reveal various moderate disc bulges which might account for plaintiff's pain.  At least, it would not hurt matters to obtain a clarification of the meaning of the MRI with respect to its impact on the treating physician's lifting restrictions.  The court is further confused by the ALJ's finding that plaintiff could not perform his past work (which in the recent past simply involved supervision and business matters in his trucking business) with a finding of an ability to perform light work.   This is especially so in that the dated consultative examination did not rely at all on a review of medical records.

1  ACCORDINGLY, plaintiff's Motion for Summary Judgment is granted, the Commissioner's Cross Motion for Summary Judgment is denied. This matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. §405(g) for further findings in accordance with this order.

DATED: 1/18/06

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

GGH:gh:035
willis.ord